Counsel of Record:
George S. Canellos, Regional Director
Jack Kaufman
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
3 World Financial Center – Suite 400
New York, NY 10281
(212) 336-0106 (Kaufman)
(212) 336-1319 (fax)

Local Counsel:
Susan J. Steele
Assistant United States Attorney
United States Attorney's Office
  for the District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2920
(973) 645-2010 (fax)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

        - against -

SANDRA VENETIS, SYSTEMATIC
FINANCIAL SERVICES, INC., SYSTEMATIC
FINANCIAL ASSOCIATES, INC., and
SYSTEMATIC FINANCIAL SERVICES, LLC,

                Defendants,

        - and -

VENETIS LLC, JENNIFER VENETIS, and
KEVIN PERSLEY,

                Relief Defendants.
-----------------------------------------------------------------x

10 Civ. _____ ( )

ECF CASE

VERIFIED
COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint against defendants Sandra Venetis, Systematic Financial Services, Inc., Systematic Financial Associates, Inc., and Systematic Financial Services, LLC (collectively, the "Defendants"), and relief

defendants Venetis LLC, Jennifer Venetis and Kevin Persley (collectively, the "Relief Defendants"), alleges:

## SUMMARY

1. This action concerns an offering fraud and multi-million dollar Ponzi scheme that was conceived and orchestrated by defendant Sandra Venetis, ("Venetis"), the founding principal and president of Systematic Financial Associates, Inc. ("SFA"), a registered investment adviser located in Branchburg, New Jersey. Since at least 1997, Venetis, operating through SFA and Systematic Financial Services, LLC ("SFS Tax"), as well as through an alter-ego entity, Systematic Financial Services, Inc. ("SFS Notes"), fraudulently obtained over $11 million from at least 100 SFA advisory clients, SFS Tax clients and others. The Defendants accomplished the scheme by fraudulently offering and selling promissory note securities (the "Notes") in a series of transactions that the Defendants did not register with the Commission. Many of the victims of the Defendants' fraudulent scheme were retired or unsophisticated in securities investments. Venetis, acting on behalf of the entity defendants, made numerous and varied representations to actual or prospective investors in the course of the fraudulent offerings, including that: (a) Venetis would invest the investors' funds in unspecified investment vehicles or in Notes, which she claimed funded loans to doctors or were related to Medicare payments; (b) the investments would generate annual returns that ranged from 6 to 11 percent; (c) the returns were tax-free because of a loophole in the tax code; (d) doctors personally acknowledged their obligation to repay the loan by co-signing the Notes; (e) the Notes were insured by the Federal Deposit Insurance Corporation ("FDIC"); and (f) Systematic Financial would pay the investors their principal upon maturity of the Notes, minus any interest that may have been paid. All of these

claims were entirely false. In reality, Venetis forged the signature of an actual doctor or signed the name of a fictitious doctor on the Notes. Venetis also concealed that the purported co-signatories on the Notes had no knowledge of or involvement in the scheme and received no proceeds from the Notes offerings.

2. The Defendants' Notes offerings were unsupported by any investments, assets, or related revenue. Instead of investing the investors' funds, Venetis systematically misappropriated and misused the proceeds of the Notes offerings to pay interest and principal owed to investors, to pay operating expenses incurred by SFA and SFS Tax, to pay for her own home mortgage, foreign travel, gambling, and other personal expenses, and to provide funds to the Relief Defendants. Defendants raised money from investors through fraudulent Notes offerings as recently as July and August 2010.

## VIOLATIONS

3. By virtue of the conduct alleged herein, the Defendants, directly or indirectly, singly or in concert, have engaged in transactions, acts, practices, and courses of business that constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]; and Defendants Venetis and SFA violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act

[15 U.S.C. § 78u(d)(1)] and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)] seeking a judgment: (i) restraining and permanently enjoining Defendants from engaging in the transactions, acts, practices, and courses of business alleged herein; (ii) ordering Defendants and Relief Defendants to disgorge their ill-gotten gains and to pay prejudgment interest; (iii) ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; (iv) freezing assets of the Defendants and Relief Defendant Venetis LLC; (v) requiring a verified accounting; (vi) appointing an independent monitor to oversee Defendants and Relief Defendant Venetis LLC; (vii) requiring preservation of documents; and (viii) permitting expedited discovery.

5.  This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77v(a)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78aa] and Sections 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9, 80b-14].

6.  Venue is proper in the District of New Jersey under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because the Defendants may be found in, are inhabitants of, or transact business in this district, and offerings and sales of securities and certain of the transactions, acts, practices, and courses of business constituting the violations alleged in this Complaint took place in this district.

7.  Defendants, directly or indirectly, singly or in concert, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails,

in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

## DEFENDANTS

8. **Sandra Venetis**, age 59, resides in Whitehouse Station, New Jersey. Venetis holds Series 6 and 7 securities licenses and is a certified financial planner and a chartered financial consultant. She is the president and sole principal of SFA, and the sole owner of SFA, SFS Notes, SFS Tax and Venetis LLC, all of which she operated from the same office. Venetis orchestrated, executed and controlled the fraudulent Notes offerings.

9. **Systematic Financial Associates, Inc. ("SFA")** is a New Jersey corporation with its principal place of business in Branchburg, New Jersey. SFA is wholly owned by Venetis and is an investment adviser registered with the Commission since 2007. As of August 2010, SFA had approximately 1,000 advisory clients and almost $60 million in assets under management.

10. **Systematic Financial Services, Inc. ("SFS Notes")** is a New Jersey corporation wholly owned by Venetis. Venetis created SFS Notes solely for the purposes of conducting the fraudulent Notes offerings. SFS Notes is not registered with the Commission in any capacity.

11. **Systematic Financial Services, LLC ("SFS Tax")** is a New Jersey company with its principal place of business in Branchburg, New Jersey. SFS Tax offers tax preparation and accounting services and is wholly owned by Venetis. SFS Tax is not registered with the Commission in any capacity.

## RELIEF DEFENDANTS

12. **Venetis LLC** is a New Jersey company with its principal place of business in Branchburg, New Jersey. Defendant Venetis created Venetis LLC for the purpose of investing in

5

real estate ventures and the company is purported to be currently inactive. Venetis LLC is not registered with the Commission in any capacity.

13. **Jennifer Venetis**, age 36, is Defendant Venetis' daughter. She resides in Maryland. Venetis, sometimes acting through the entity defendants, provided thousands of dollars in ill-gotten gains from the fraudulent schemes to Jennifer Venetis.

14. **Kevin Persley**, age 54, is Defendant Venetis' brother. He resides in New Jersey. Venetis, sometimes acting through the entity defendants, provided thousands of dollars in ill-gotten gains from the fraudulent schemes to Persley.

## FACTS

**The Fraudulent Notes Offerings and Defendants' Misrepresentations and Omissions**

15. From at least 1997 through August 2010, Defendants offered and sold Notes in numerous offerings to SFA advisory clients, SFS Tax clients and possibly others. Defendants conducted the Notes offerings without having any registration statement on file or in effect with the Commission, as required by the Securities Act, and none of the Defendants' offerings described herein qualified for exemption from registration.

16. Venetis, operating through SFA, SFS Notes, and SFS Tax, personally solicited and obtained at least $11 million from over one hundred investors to invest in the Notes. Many of these investors are retired or unsophisticated in securities investments. No registration statement for the Notes was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the securities and transactions described herein.

17. Venetis, acting on behalf of and through the entity defendants, falsely told actual or prospective investors that she would invest their money in year-long Notes, which purportedly funded loans to doctors. At various times, Venetis falsely represented to investors that the Notes were to finance medical receivables, medical malpractice insurance premiums, or quarterly pension plans, and that the Notes were Medicare "bonds" or otherwise backed by Medicare, or that the Notes were insured by the FDIC.

18. Venetis instructed investors wishing to purchase the Notes to make checks payable to Systematic Financial, which Venetis subsequently deposited into an SFS Notes bank account over which Venetis had sole signatory authority. Venetis never invested the funds as promised, and she made no loans to doctors despite her representations to the contrary.

19. Venetis and the entity defendants did not provide Notes investors with any written disclosures concerning the investments, except for a one-page promissory note and/or an "amortization schedule" which falsely purported to show the expected interest payments on the investment, returns Venetis falsely claimed were tax-free.

20. The phony Notes promised annual interest rates ranging from approximately 6 to 11 percent, and stated that Systematic Financial would pay the principal at the maturity date, one year from the date of execution. Venetis further told investors that they could "roll over" their investments annually by entering into subsequent year-long Notes.

21. The Notes falsely stated that the investment "shall be used to fund the annual pension monies due at this time from the Promisor [the doctor signatory]." The Notes further provided that "Systematic Financial" was responsible for payment in the event of default by the doctor.

22. Venetis signed the Notes as President of "Systematic Financial" and the Notes falsely purported to be co-signed by the doctors who were to receive the Note proceeds.

23. Venetis further falsely represented to certain investors that the Notes were a relatively safe, conservative, fixed-income investment. To assuage one investor's concerns about the safety of his investment, Venetis explained, in a letter on SFA letterhead, that she was "the one primarily concerned about safety because Systematic is the co-signer on the note," which is why Venetis "always diversified the notes among the medical practices and never co-sign more than I can handle." Venetis also falsely represented that the investors would earn tax-free annual returns because of a supposed loophole in the tax code.

24. Lured by Defendants' promises of higher returns and safe principal, some investors cashed in bank certificates of deposits in order to obtain funds to invest with Defendants. Defendants also induced certain investors to withdraw funds from their individual accounts at large asset management or brokerage firms in order to invest those funds in the Notes.

25. In a related scheme, Venetis fraudulently induced certain investors to invest in a "side program" which purportedly offered higher returns than those attainable from an investment in Notes. Rather than investing the investors' funds to generate the higher returns, Defendants diverted the investors' funds to cover, among other things, Venetis' personal expenses and to make Ponzi payments. Defendants did not provide investors in this fictitious "side program" with any documentation concerning the purported investments.

26. The Notes provided by Defendants to investors purport to be co-signed by doctors to whom loans were to be made. Contrary to Venetis' representations to investors, none of the

8

purported co-signatories received any proceeds from the Notes or had any knowledge of or involvement in the transactions. Venetis forged all of the "doctor" signatures, either making up the doctor names or using the names of actual SFA or SFS Tax clients as purported co-signatories—without authorization.

27. Venetis repeatedly represented to Notes investors that their investments were earning the promised returns. These representations were false.

28. Venetis personally prepared and sent investors annual "amortization schedules." These schedules reflected the purported value of their investments in the phony Notes and showed that the investments were accruing interest at the promised annual rate of return in the range of 6 to 11 percent.

29. In connection with a December 20, 2009 Note renewal, one investor received an "amortization schedule" purporting to show the accrued interest and increased value of his investment. The schedule reflected the initial $15,000 investment made on December 20, 2005, growing in value to $22,325 as of December 20, 2010, when the Note came due.

30. These fraudulent schedules showing consistent, positive returns induced investors to keep their funds in the Notes or in some cases to invest additional sums. When investors made follow-on investments or decided to "renew" their Notes, Venetis never told them that she had misappropriated their investments or that she used funds from operating revenue, from other investors, or elsewhere to make the principal and/or payments on the Notes.

31. Venetis recommended that one investor, a retired fireman and an SFA advisory client, invest in Notes in order to diversify his portfolio, and represented that it was a fixed-income investment upon which he could make monthly draws after retirement. He invested

$50,000 in the notes in 2006 and renewed his investment annually. Based on the fraudulent annual amortization schedules provided by Venetis, the investor believed his investment was earning approximately 6.9 percent annual returns. In July 2010, he invested an additional $75,000, which Venetis solicited during a meeting to review his financial portfolio. Based on his investment's purported performance, this investor recommended that his son also invest with SFA and Venetis. The son, who is currently serving in the U.S. military in Iraq, invested $5,900 in the Notes in March 2008 and an additional $10,000 in October 2008 – monies he intended to use to purchase a home upon his return from service.

32.  Another SFA advisory client, a retired investor with no financial background, invested approximately $50,000 in the phony Notes in 2005. Venetis falsely told the investor that the Note proceeds funded medical malpractice insurance. He renewed the Note annually and, based on the fraudulent annual amortization schedules provided by Venetis, believed his investment was earning approximately 6 percent annual returns. In 2009, he recommended that his wife also invest in the Notes, and she invested $10,000 from the proceeds of a house sale.

33.  Another SFA advisory client, an elderly investor with no financial background, invested with SFA several years ago. Venetis never told him about the Notes, and he never authorized any investment in the Notes. Instead, Venetis solicited and obtained approximately $45,000 from the investor to invest in a "cash" account earning 6.8 percent interest. Venetis never disclosed to this investor where or whether she actually invested the funds, but Venetis provided the investor with fabricated written statements showing the investment's steady growth.

34. Venetis continued to offer and sell the Notes to investors as recently as July and August 2010, when at least five investors invested a total of more than $225,000 in the fraudulent Notes.

35. At the time that Defendants sold the Notes, Defendants knew or recklessly disregarded the fact that the Notes and "side" investments were fictitious. Defendants, in the Notes documentation and in communications with investors, knowingly or recklessly made material misrepresentations and omissions concerning, for example, Defendants' use of investor funds, the safety of invested principal, the risks associated with the investments, and the true source of payments to investors.

36. Venetis also knowingly or recklessly, and without making adequate disclosures to investors: (a) used investor funds to pay interest and principal to other investors; (b) converted investor funds to her personal use; and (c) converted investor funds to the use of the entity Defendants and the Relief Defendants.

***Misappropriation and Looting of Investor Funds***

37. Instead of investing the proceeds of the Notes offerings in loans to doctors, as represented to investors, Venetis deposited the funds in a SFS Notes bank account at Bank of America. Venetis is the sole signatory and exercises sole control over that account.

38. Venetis misappropriated and dissipated the investors' funds from the SFS Notes bank account. She improperly used investor funds to, among other things, pay operating expenses incurred by SFA and SFS Tax businesses, pay interest and principal owed to investors, pay her personal expenses and finance her lifestyle, and to make payments to, or for the benefit of, the Relief Defendants.

39. Among other fraudulent devices, Venetis concealed from investors that she used investor funds to pay her home mortgage and property taxes, to purchase a home for relief defendant Jennifer Venetis, to pay for improvements on a home owned by relief defendant Persley, to pay her own gambling debts, and to pay for trips to Alaska, Italy, France, India and the Caribbean, among other places.

40. Venetis transferred investor funds to accounts held by SFA and SFS Tax in order to pay operating expenses. In 2010 alone, Venetis transferred over $108,000 from the SFS Notes bank account to bank accounts held by SFA and SFS Tax. Venetis is the only signatory on the SFA and SFS Tax accounts.

41. Venetis also transferred investor funds to accounts held by the Relief Defendants. For example, Venetis transferred at least $150,000 to Venetis LLC in 2008. In 2010 alone Venetis transferred at least $104,000 from the SFS Notes bank account to relief defendant Jennifer Venetis. In August 2010, Venetis wrote checks totaling at least $10,000 from SFA and SFS Tax accounts to relief defendant Kevin Persley.

42. Venetis LLC, Jennifer Venetis and Kevin Persley received proceeds of the fraud, but did not provide <u>bona fide</u> services or other valuable consideration in exchange for the payments made to them.

43. In 2010, shortly before the fraudulent schemes collapsed, Venetis admitted in conversations with certain SFA employees that she used funds obtained from investors in the Notes for non-investment purposes such as supporting the operations of Defendants SFA and SFA Tax. Venetis also admitted that she paid investors with funds obtained from other investors in the Notes.

44. In approximately August 2010, Venetis told certain investors in the Notes to lie about the nature of their investments with Defendants, if contacted by the authorities.

### FIRST CLAIM FOR RELIEF
**Violations of Sections 5(a) and 5(c) of the Securities Act**
**(Defendants Venetis, SFA, SFS Notes, and SFS Tax)**

45. The Commission re-alleges and incorporates paragraphs 1 through 44 by reference as if fully set forth herein.

46. The Defendants, directly or indirectly, singly or in concert, in connection with certain unregistered sales of securities: (a) made use of the means or instrument of transportation or communication in interstate commerce or of the mails to sell such securities through the use or medium of any prospectus or otherwise; (b) carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, such securities for the purpose of sale or for delivery after sale; and/or (c) made use of the means or instrument of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy such securities through the use or medium of any prospectus or otherwise.

47. By reason of the foregoing, the Defendants, singly or in concert, directly or indirectly, violated, and unless enjoined will again violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

### SECOND CLAIM FOR RELIEF
**Violations of Section 17(a) of the Securities Act**
**(Defendants Venetis, SFA, SFS Notes, and SFS Tax)**

48. The Commission re-alleges and incorporates paragraphs 1 through 47 by reference as if fully set forth herein.

49. The Defendants, directly or indirectly, singly or in concert, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce, or by use of the mails, knowingly or recklessly have: (a) employed or are employing devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact, or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers of securities.

50. By reason of the foregoing, the Defendants, singly or in concert, directly or indirectly, violated, and unless enjoined will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Defendants Venetis, SFA, SFS Notes, and SFS Tax)**

51. The Commission re-alleges and incorporates paragraphs 1 through 50 by reference as if fully set forth herein.

52. The Defendants directly or indirectly, singly or in concert, in connection with the purchase and sale of securities, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, knowingly or recklessly have: (a) employed or are employing devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading;

and/or (c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon other persons.

53. By reason of the foregoing, the Defendants, singly or in concert, directly or indirectly, violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5].

## FOURTH CLAIM FOR RELIEF
### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Defendants Venetis and SFA)

54. The Commission re-alleges and incorporates paragraphs 1 through 53 by reference as if fully set forth herein.

55. SFA is a registered investment adviser. At all relevant times, Venetis and SFA were investment advisers under Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

56. Defendants Venetis and SFA directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]: (a) knowingly or recklessly have employed or are employing devices, schemes, or artifices to defraud any client or prospective client; or (b) have engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon any client or prospective client.

57. By reason of the foregoing, Defendants Venetis and SFA, singly or in concert, directly or indirectly, violated, and unless enjoined will again violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

## FIFTH CLAIM FOR RELIEF
(Relief Defendants Venetis LLC, Jennifer Venetis, and Kevin Persley)

58. The Commission re-alleges and incorporates paragraphs 1 through 57 by reference as if fully set forth herein.

59. Relief Defendants Venetis LLC, Jennifer Venetis and Kevin Persley were recipients, without consideration, of proceeds of the fraudulent and illegal sales of securities alleged above. Relief Defendants profited from such receipt or from the fraudulent and illegal sales of securities alleged above by obtaining illegal proceeds under circumstances in which it is not just, equitable, or conscionable for them to retain the illegal proceeds. Consequently, they have been named as Relief Defendants for the amount of proceeds by which they have been unjustly enriched as a result of the fraudulent scheme or illegal sales transactions.

60. By reason of the foregoing, Relief Defendants Venetis LLC, Jennifer Venetis and Kevin Persley should disgorge their ill-gotten gains, plus prejudgment interest.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court issue a Judgment:

### I.

Permanently restraining and enjoining Defendants, and their agents, servants, employees, and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)], Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], and Defendants Venetis and SFA from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

## II.

Ordering Defendants and Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest thereon.

## III.

Ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## IV.

Freezing the assets of Defendants and Relief Defendant Venetis LLC, pending further Order of the Court.

## V.

Directing Defendants and Relief Defendant Venetis LLC to file with this Court and serve upon the Commission, within thirty (30) days, or within such extension of time as the Commission agrees to, a verified written accounting, signed by the Defendants and Relief Defendant Venetis LLC (or a responsible officer thereof), under penalty of perjury.

## VI.

Enjoining and restraining Defendants and Relief Defendant Venetis LLC, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books, and records.

## VII.

Appointing an independent monitor.

## VIII.

Permitting expedited discovery.

## IX.

Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 1, 2010

By: _____
GEORGE S. CANELLOS (GS-8092)
REGIONAL DIRECTOR
SECURITIES AND EXCHANGE
COMMISSION
3 World Financial Center
New York, NY 10281
(212) 336-0106 (Kaufman)
Attorney for Plaintiff

Of Counsel:
Bruce Karpati
Robert Kaplan
Ken C. Joseph
James McGovern
Catherine E. Lifeso
Panayiota K. Bougiamas

Local Counsel:
Susan J. Steele
Assistant United States Attorney
United States Attorney's Office
  for the District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 645-2920
(973) 645-2010 (fax)